UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:25-MJ-03081 |
| | ) | |
| OWEN MCINTIRE | ) | |

**OPPOSITION TO GOVERNMENT'S MOTION FOR DETENTION AND NOTICE OF PROPOSED RELEASE PLAN**

Although the charges in this case are serious, and the circumstances of this prosecution are unusual, those allegations do not justify the extraordinary remedy of pretrial detention. The government has invoked a presumption based on the alleged use of a destructive device. But here that presumption is rebutted by the overwhelming weight of the evidence under the statutory factors that this Court must consider. Owen McIntire is an adolescent first-year college student with no criminal history, deep ties to his community, and a stable, supportive home environment waiting for him. He has well-documented medical and mental health needs—including autism spectrum disorder (ASD), ADHD, depression, and gender dysphoria—that require ongoing care and structure, which can only be provided in the community.

While the government has suggested political overtones to the alleged conduct, those characterizations are speculative and not a substitute for the individualized, fact-based analysis the Bail Reform Act demands. Courts must decide detention based on the evidence presented, not rhetoric or conjecture. And the evidence here supports release on conditions that will ensure both public safety and Owen's appearance in court.

I.  **Legal Framework**

Owen comes before the Court following his arrest in this District based upon an arrest warrant for a two-count Complaint from the Western District of Missouri charging him with malicious

1

damage to property and possession of an unregistered destructive device. At the initial appearance before the Court pursuant to Rule 5, the government moved for detention citing 18 U.S.C. § 3142(f)(1)(A) (i.e. "danger to the community") and (f)(2)(A) (i.e. "serious risk of flight"). The government also moved for detention citing the presumption in 18 U.S.C. § 3142(e)(3)(C) (i.e. "federal crime of terrorism").

Under the statutory scheme of the Bail Reform Act, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention."). One charged with a crime is, after all, presumed innocent. *See generally Stack v. Boyle*, 342 U.S. 1, 4 (1951). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. *See United States v. Gonzales-Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), cert. dismissed sub nom., *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

In this case, the government argues that a rebuttable presumption of detention arises under 18 U.S.C. §3142(e)(3)(C). However, even if the Court finds the government meets its burden that the presumption applies, the Court may still release Owen "as long as the defendant has presented *some* evidence and the magistrate or judge has evaluated all of the evidence with Congress's view of the general problem in mind." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (emphasis added).

Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed

in § 3142(g)(3)." *Id*. (emphasis added); *Jessup*, 757 F.2d at 384. "Any evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707. If a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of flight risk and dangerousness is definitively rebutted. *Id.* (Once this burden of production is met, the presumption is 'rebutted.'") (quoting *Jessup*, 757 F.2d at 384); *see also O'Brien*, 895 F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of defendant's home). The government always bears the burden of persuasion. *Id.*; *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

After the presumption is rebutted, the Court must weigh the presumption against all the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *See Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors support release.

**II.    Owen's Personal History**

Owen McIntire is a 19-year-old first-year college student with no prior criminal record, history of violence, or prior failures to appear.[1] He has lived in the Western District of Missouri nearly his entire life, and his life there reflects stability, support, and structure. At the time of his arrest, he was pursuing a degree in physics at the University of Massachusetts at Boston.

For all but the past seven months, Owen has lived with and relied on the support of his parents. Diagnosed at age 10 with ASD and ADHD, Owen has always required a highly structured and

---

[1] Owen is in his first year of college but is considered a sophomore due to the credits he accumulated in high school.

supportive environment to thrive. His parents have long provided that stability and are uniquely equipped to continue doing so while this case is pending. Dr. David McIntire, Owen's father, is a retired college professor. Owen's mother, Michelle McIntire, works out of the home, providing private voice and piano lessons, and is president of her local chapter of the National Association of Teaching Singers. Both parents can be home during all the times that Owen is there and are willing and able to serve as third-party custodians.

As a child, Owen trained in ballet from ages 8 to 15, where he found the structure he needed as well as a creative outlet and community. Ultimately, he stepped away from dance when the time commitment began to interfere with his studies. This decision was made during a particularly difficult period. Around the same time, Owen was diagnosed with depression, a condition that he continues to manage with therapy and daily medication. Rather than retreating, Owen sought out new forms of connection and community that allowed him to also focus on his academics. In his sophomore year of high school, he joined the scholar bowl and robotics clubs at his school. There he found intellectual engagement and lasting friendships. He also worked at Jimmy John's in his junior and senior years. The friendships he developed from ballet, his high school activities, and his job are firmly rooted in Missouri and are meaningful community ties.

Medically, Owen faces serious and ongoing needs. He takes daily medications for depression and ADHD and has consistently demonstrated insight into his diagnoses and compliance with his treatment. He also receives gender-affirming medical care, which began in March of this year and is likely to be interrupted or terminated entirely if he remains in pretrial detention. This care, along with mental health support, is integral to his wellbeing. By moving back home with his parents, he will have access to the care providers who are familiar with him and his specific needs.

Since his arrest, Owen has identified experienced attorneys in the prosecution district who have agreed to represent him on the substantive case, and they are preparing to enter their appearance.

4

The decision to seek counsel and begin preparing his defense before even appearing in the prosecuting district demonstrates that he has no intention of fleeing or avoiding prosecution.

### III. Charges

The Government alleges two Tesla Cybertrucks were ignited on March 17, 2025 at 11:16 p.m. at 10111 State Line Road, Kansas City, Missouri, in the asphalt parking lot of a car dealership. According to the dealership's website, it closed at 7:00 p.m. that day. The Government alleges that a primitive ignition device informally referred to as a "Molotov cocktail" was utilized. Its components were alleged to be empty apple cider vinegar bottles filled with gasoline and dish towels. The Government alleges that two devices were used, but one failed. The two Cybertrucks were electric vehicles that were not filled with additional gasoline. According to video footage from contemporaneous news reports, the fire occurred in the center of the deserted parking lot, away from both the concrete dealership structure and State Line Road.[2] Two Tesla charging stations, valued at $550 each, were also damaged.



---

[2] News footage highlights what appears to be a serious act of local vandalism, rather than a national security event that one would expect to garner the personal attention of all four top federal law enforcement officials. *Compare* https://www.kshb.com/news/local-news/two-tesla-cyber-trucks-burned-overnight; with https://www.justice.gov/opa/pr/kansas-city-resident-arrested-and-charged-connection-tesla-arson.

## IV.   Argument

Release is warranted here because there are numerous facts under § 3142(g) that rebut the presumption of detention and demonstrate there are conditions of release that will reasonably assure both Owen's appearance in court and the safety of the community. The law is clear that (1) very little is required for a defendant to rebut the presumption, and (2) courts must weigh the rebutted presumption against every factor that militates in favor of release before detaining a defendant. In addition, it is impermissible to detain a defendant in a presumption case based solely on evidence of past dangerousness, the nature of the crime charged, or the weight of the evidence.

As detailed herein, there is more than "some" evidence that Owen will not flee or endanger the community if released. The presumption is therefore rebutted in this case. Owen has presented evidence that he is a 19-year-old college student with no criminal history and no record of violent conduct, and Owen has demonstrated no behaviors that would suggest his inability or unwillingness to follow the Court's orders. He is medically and psychologically vulnerable and requires ongoing care, and a structured and supportive home is ready to meet those needs. His parents are prepared to serve as third-party custodians and are familiar with his specific needs. He will likely be reemployed with Jimmy John's upon his release and will be back in the community where he has built significant relationships. He has nowhere to go, no financial means, nor even a valid passport to effectuate flight. And he is not an unmanageable danger to the community, particularly given the wide range of release conditions available to the Court.

## V.   Proposed Conditions

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Owen's appearance in court and the safety of the community.

1. Place Owen in custody of his mother and father, Dr. David and Michelle McIntire, as third-party custodians "who agree[] to assume supervision and to report any violation of a release condition to the court." 18 U.S.C. § 3142(c)(1)(B)(i).
2. Owen shall reside with his parents at the address provided to the government and Probation.
3. Home confinement with location monitoring. Exceptions for religious service, medical appointments, legal appointments, court, and employment to be approved by his supervising officer.
4. Maintain or actively seek employment or an education program.
5. Restriction of travel to the Western District of Missouri and Wyandotte and Johnson Counties.
6. Report as directed to pretrial services.
7. Continue mental health treatment and remain compliant with prescribed medications and treatment plan.
8. Any other condition that the Court deems appropriate.

Because there are conditions of release that will reasonably assure Owen's appearance in court and the safety of the community, the Court should deny the government's motion for detention.

Pursuant to this Court's text order, undersigned counsel has conferred with the government regarding these proposed conditions. The proposed conditions were also provided to the probation office.

OWEN MCINTIRE
By his attorney,

*/s/ Curtis Pouliot-Alvarez*
Curtis Pouliot-Alvarez, BBO #693348
Assistant Federal Defender
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 23, 2025.

*/s/ Curtis Pouliot-Alvarez*